The Honorable Nick Wilson State Senator P.O. Box 525 Pocahontas, Arkansas 72455
Dear Senator Wilson:
This is in response to your request for an opinion on two questions posed by the superintendent of a school district. Specifically, you have attached a letter from the superintendent containing the following questions:
 1. Act 34 of 1983 requires that 56% of all new money that fits the definition of an increase of net current revenue be used on teachers' salaries. Is it permissible to use parts of that money to meet the requirements of a salary schedule in paying for additional education hours and in years of teaching experience?
 2. As a result of an underpayment of that 56% rule, is it a violation of law to pay two teachers, who have the same educational experience, different amounts? One would be on the salary schedule and one would not.
For the reasons that follow, it is my opinion that the answer to your first question is, generally, "no" and the answer to your second question is "yes".
The first question refers to the "56%" requirement found in Act 34 of 1983. That provision is now codified at A.C.A. 6-20-319(4)(A) (Supp. 1989), and it provides as follows:
 Each district in the state shall pay its certified personnel an amount equal to at least seventy percent (70%) of its net current revenue. Not less than eighty percent (80%) of seventy percent (70%) of each school district's increase in net current revenue over the net current revenue received the previous school year less the total salary expenditure required to fund additional certified personnel added to the staff of the district in the school year shall be divided equally amount the certified personnel positions existing in the district in that year unless the board of directors of the district and a majority of the teachers agree to a different distribution.
This provision requires that 56% (80% of 70% = 56%) of the increase in net current revenue be divided equally between all certified positions, unless there is an agreement to the contrary. The first question is whether this money can be used to fulfill the requirements of a "salary schedule".
Subsection (4)(B) of A.C.A. 6-20-319 provides that:
 (B) The district shall file with the State Board of Education annually a salary schedule for its certified employees which recognizes a minimum level of training and experience. This schedule shall reflect the actual pay practices of the district, including the fringe benefits.
We have not been provided with the salary schedules of a particular district. A typical salary schedule reflects the salary level for certified personnel taking into account various levels of education and experience. Pursuant to the schedule, certified personnel are paid more for gaining more experience and for obtaining additional education.
It may be argued that the salary schedule is a "personnel policy" of the district. Arkansas Code Annotate 6-17-201 (Supp. 1989) provides that "[e]ach school district in the state shall have a set of written personnel policies, including the teacher salary schedule". Thus, the teacher salary schedule has been referred to by the legislature as a "personnel policy" of the district. This fact becomes important when viewed in light of A.C.A.6-17-204, which provides that:
 (a) The personnel policies of each school district in effect at the time a teacher's contract is entered into or renewed shall be considered to be incorporated as terms of the contract and shall be binding upon both parties unless changed by mutual consent.
It may thus be argued that if the salary schedule is a "personnel policy," it is a part of each teacher's contract and that teacher is entitled as a contractual matter to be paid according to the schedule. It may also be concluded from Arkansas case law construing relevant statutes, that school districts are required to adopt salary schedules and abide by them. See generally, Marvel v. Coal Hill Public School District, 276 Ark. 369, 635 S.W.2d 245
(1982).
We are thus faced with two mandatory requirements. Certified personnel must receive 56% of any increase in net current revenue over last year, and they must be paid according to the district's salary schedule. The first question is to what extent the former requirement may be merged into or overlap the latter. For example, let's suppose that in a particular year, there is an increase in net revenue in a particular school district such that 56% of the increase, when divided equally between all certified positions, would amount to $1000 raise to all certified personnel. (The distribution of the 56% is in the form of a raise, not a one-time yearly bonus.) Let us also assume that in that same year, a particular teacher obtained several hours of additional education. These additional hours would entitle the teacher to a raise based on the district's salary schedule. For purposes of the example, let's assume that the teacher would be entitled to a $300 raise for the additional education hours. The question posed in your request is whether the $1000 can be used to pay the $300. In other words, whether the school district can distribute the $1000 to all certified positions equally, but then maintain that the $300 salary schedule raise is included in the $1000 distribution. Or, if the district has already given the teacher the $300 salary schedule raise, the question is whether it may distribute only $700 to the teacher from the 56% requirement.
We have been unable to find a controlling, or even helpful Arkansas case law on the question. See, however, very generally, Fennell and Reeves v. School Dist. No. 13, 208 Ark. 620, 187 S.W.2d 187 (1945). Additionally, the law of other states is too dissimilar to offer any guidance. As such, we must construe the applicable statutes and determine the legislative intent.
The Arkansas statutes offer little help in resolving the issue of how the 56% requirement relates to the salary schedule requirement. Either they constitute two separate and independent requirements, or they may be used in some way to fulfill and complement each other. It is my opinion that the statutory provision which offers the most guidance in resolving the issue is the statute which requires an equal distribution of the 56%.
There are at least three ways in which these two requirements may relate. Firstly, it might be that each year the 56% is to be used only to fill in the required salary schedule raises. The district would simply take the gross 56% amount and use it to distribute raises to each teacher based on the additional experience and educational hours that teacher received in that year. Clearly, this is not a correct use of the 56% because it does not result in an "equal" distribution to all certified personnel positions. It results in a distribution based upon additional education and experience alone, and completely nullifies the requirement of an equal distribution of the 56%.
Secondly, it may be that the 56% is indeed to be distributed equally to each position, but that as this is being done, the salary schedule raises which would have otherwise occurred independently will be included in the distribution. That is, a teacher who received additional hours of education in a particular year will receive the same distribution as a teacher who received no additional hours of education. This results in an "equal" distribution of the 56%, but has the effect of nullifying the salary schedule requirement and skewing its provisions. That teacher has been compensated in no way for obtaining additional education. He or she would have received the same amount had they not exerted the effort, and, in fact, may now receive the same pay as a teacher with less educational hours.
Finally, it must be, that to give effect to both the 56% requirement and the salary schedule requirement, each must be complied with separately. The 56% must be distributed equally, unless there is an agreement to the contrary, and the teachers must be paid according to a salary schedule based upon training and experience. Using 56% of the increase in net revenue to fulfill the salary schedule will deviate from one of these requirements. It is thus my opinion that it is generally prohibited, unless an agreement between the teachers of a particular district obviating the equal distribution and allowing the contemplated action exists.
In my opinion, the answer to your second question is "yes." It is, in my opinion, a violation of law to pay two teachers with the same education and experience levels different amounts. The question states that the discrepancy result because of an underpayment of the 56% requirement. I assume that in a given year the district failed to pay its certified personnel positions an equal distribution of 56% of the increase in net current revenue. This district is now being required to make a back payment. The discrepancy arises with respect to teachers who were hired after the payment should have been made, but before it is actually made. These teachers were not on the payroll when the payment should have been made, and their contracts were negotiated on the basis of the salary schedule existing at the time they were hired. The teachers who were employed in the district at the time the payment should have been made will receive the backpayment raise owed them, and their salaries will rise by that amount. One such teacher may now make more than a newly hired teacher with the same education and experience, who will not receive the back payment. This results in a deviation from the salary schedule.
It is my opinion that such a deviation is unlawful. These two teachers are to be paid in accordance with a salary schedule based upon experience and training. If they both have the same experience and training, the schedule would require that they be paid equal amounts. In order for this to occur, either one teacher must be paid less, or the other more, or a little of both. The teacher who is entitled to the backpayment cannot be paid less. He or she is entitled to the back payment. The remedy is thus to pay the newly hired teacher the higher amount, so that the two teachers with the same experience and training are paid the same amount. It is helpful to look at the underpayment situation in terms of what would have happened if the 56% requirement was complied with when and as it should have been. Had the requirement been complied with originally, all of the certified personnel positions in the district would have been increased by the given amount. This would have been reflected in the salary schedule, and when the newly hired teacher was hired, it would have been in accordance with the salary schedule resulting from compliance with the statutory requirement. In other words, had the statutory requirement been complied with in the first place, the new teacher would have been hired at the higher amount.
It is thus my opinion that the two teachers must be paid according to the schedule, and must be paid the same amounts.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
STEVE CLARK Attorney General
SC:arb